**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

MICHAEL A. BEHR,                  :

          Plaintiff,       :     Civil Action No.: 1:26-cv-6008

                      :

     v.                 :

                      :

EXEGY INCORPORATED,    :     **COMPLAINT**

          Defendant.    :

------------------------------------------------------------------x

Plaintiff Michael A. Behr ("Plaintiff" or "Behr"), by and through his undersigned counsel, Law Office of Aaron S. Foldenauer, alleges for his Complaint against Defendant Exegy Incorporated ("Exegy" or the "Company" or "Defendant"), as follows:

## NATURE OF THE ACTION

1. This action arises out of Defendant Exegy's willful, lawless, and multi-front campaign of discrimination and retaliation against a high-performing senior leader who had over seventeen years of loyal employment with Exegy.

2. As set forth below, Defendant abruptly terminated Plaintiff Michael Behr's employment in November 2024 for two distinct, illegal, and parallel reasons: *First,* because of his disability and his protected requests for reasonable accommodations under federal, state, and local laws; and *second,* in direct retaliation for his protected internal disclosures exposing Defendant's incorrect exchange timestamps on its trading systems, and which he reasonably believed was a violation of law, rule, or regulation. Whether driven by discriminatory animus toward his medical needs or a corrupt desire to silence him for blowing the whistle on the widespread, critical errors in Exegy's trading systems—or both—Defendant's sudden termination of Plaintiff was an egregious violation of the law.

## JURISDICTION AND VENUE

3.     This Court has original jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. § 1332, in that Plaintiff's claims exceed the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. The Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, in that certain of the Plaintiff's claims arise under the laws of the United States, namely the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112(a) and 42 U.S.C. § 12203(a).

4.     The Court has supplemental jurisdiction over Plaintiff's related claims arising under State and local law pursuant to 28 U.S.C. § 1367(a).

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

6.     On November 25, 2024, Behr filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  On April 22, 2026, the EEOC subsequently issued Plaintiff a Notice of Your Right to Sue ("Right to Sue").  Plaintiff brings his complaint within 90 days of the issuance of the Right to Sue.

## PARTIES

7.     Plaintiff Michael Behr ("Behr") is an individual and a citizen of the State of New York.

8.     Defendant Exegy Incorporated is a Delaware corporation, and its principal place of business and corporate headquarters is located in St. Louis, Missouri.

9.     Exegy provides electronic infrastructure and other financial services to companies that trade in the financial markets.

10.    Exegy is a global provider of trading infrastructure solutions, providing real-time and historical market data, predictive trading signals and strategies, automated trading, and execution to its clients.  Exegy's clients include some of the largest investment banks and hedge funds in the world.

11.    Exegy is registered with the New York Department of State as a Foreign Business Corporation authorized to do business in the County, City, and State of New York, where Behr was employed.

12.    At all relevant times, Exegy maintained a physical office within New York County (Manhattan), New York.

13.    Effective during or about November 1, 2024, the Company's New York City office was located at 199 Water Street, Suite 33-109, New York, NY 10038.  Behr conducted in-person work at this office on several occasions prior to his termination.

14.    The Company's previous New York City office was located at 500 Seventh Avenue, 12th Floor, New York, NY 10123.  During the calendar year 2024, Behr typically worked on an in-person basis at this office approximately twice per week.

## BACKGROUND AND PERFORMANCE

15.    Behr graduated from the Massachusetts Institute of Technology ("MIT") in June 1998 with a Bachelor of Science in Computer Science and Electrical Engineering.  Behr has more than 20 years of technical experience in the financial technology ("FinTech") industry.

16.    Behr was hired by Exegy, and began work, in October 2007 as a Senior Solutions Architect.  Exegy needed a New York City-based employee like Behr to visit New York City-based customers and potential customers (given that many investment banks and hedge funds are located in New York City).

17.    As a Senior Solutions Architect, Behr supported other members of Exegy sales teams to provide technical expertise.

18.    In the seventeen years Behr worked with the Company, Behr regularly received positive performance reviews and increases to his compensation package.

19.    During or about January 2016, Behr was recognized as being particularly valuable to the Company, such that Exegy promoted him to Principal Solutions Architect, a position that came with increased compensation.

20.    Over the years of his employment at Exegy, Behr was the technical lead on sales teams that successfully sold products and services to major financial institutions, trading firms, and hedge funds.

21.    During or about the year 2021, Behr began to experience symptoms of "extreme daytime sleepiness" (EDS).

22.    For the years 2021, 2022, and 2023, since Behr was largely working from home, Behr was able to mitigate his condition and effectively complete his work.  During all three of these years, Behr continued to get positive performance reviews and positive feedback in connection with his work at the Company.

23.    During or about February 2023, Behr was formally diagnosed with Idiopathic Hypersomnia (IH) and began treatment.  This is a condition that causes him to become sleepy at unpredictable times.

24.    One particular drug Behr needed for treatment, Xywav, is extremely costly.

25.    During or about May 2021, Exegy acquired Vela Trading Systems LLC, which was Exegy's leading competitor.  At the time of the acquisition, the newly combined Exegy had approximately 400 employees.

26. Exegy had two large rounds of layoffs during or about February 2022 and March 2023, and over 100 employees were terminated. Behr survived both rounds of those post-merger layoffs, further indicating his good standing with the Company.

27. Throughout the more than 17 years he was employed at Exegy, Behr was able to perform, and performed, the essential duties of his job.

28. In fact, the Company gave Behr positive performance reviews in the 18 months prior to his termination, demonstrating that he was a strong performer at the Company.

29. In his June 2023 performance review, the Company stated that Behr had "good engagement and a mostly positive attitude," was a "Core Player," "Learns quickly," "[u]ses good reasoning," "Completely" met his "annual performance goals," did not need a Performance Improvement Plan ("PIP"), and that the Company should "[d]o everything [it] could to keep" him, because the Company would "be in trouble" without him.

30. In his May 2024 performance review, the Company stated that he "[c]onsistently meets performance expectations" and is "[a]ble to perform 100% of duties satisfactorily." The Company stated that Behr "has a solid understanding of our clients and their businesses really well" and was equipped to "drive more strategic sales." In fact, his performance at the Company was so strong that the Company wanted him to "invest time in supporting the onboarding efforts of new joiners [new hires] as [the Company] expand[s] the team."

**BEHR REPORTS HIS DISABILITY, AND
EXEGY FAILS TO PROVIDE ANY WRITTEN ACCOMMODATIONS**

31. During or about January 2024, senior management announced that the Company was moving to a hybrid schedule, which would mandate that Behr work in-person, in the office, at least two days per week. (Previously, Behr was working almost entirely from home.)

32.     This policy made Behr fear repercussions from experiencing medical problems while in the office.

33.     Thus, on February 1, 2024, Behr initiated a request with the Company's Human Resources (or "People") department to seek "Reasonable Accommodation[s]," so that Behr could continue to effectively perform his job duties at the Company.  Behr initiated this request via an online portal which allowed him to submit an online request (sometimes referred to as a "ticket") directly to the Human Resources department.

34.     Behr understood that reasonable accommodations for his disability are required under federal, state, and local law.

35.     Behr's direct supervisor was Yewande Sobola.  Sobola was well aware of Behr's disability.

36.     In fact, precisely because Behr reported his disability, a representative of the Company's human resources department asked Sobola during or about March 2024 to draft his job description so that purported reasonable accommodations could be made.

37.     During or about April 2024, Behr held an in-person meeting with his manager, Sobola, and Lawrence "Larry" Waldman (the Company's head of "Customer Success").

38.     During that meeting, Behr disclosed his disability and referenced his prior report of his disability to Human Resources.

39.     Behr disclosed to Sobola and Waldman that the medication he needed, Xywav, to treat his disability was extremely expensive.  Behr explained that the Company's then-new health insurance provider was not approving Xywav and thus he asked for their assistance.

40.    The extraordinary cost of Xywav, and the administration and cost of Exegy's health insurance plans, put Exegy's management on direct notice of the immense financial impact of Plaintiff's ongoing disability coverage.

41.    Upon information and belief, Exegy harbored financial animus toward Plaintiff due to the extraordinary expense of his life-altering medication, Xywav, under the Company's group healthcare plan.  (In fact, many years prior, during a company-wide meeting, an insurance broker spoke and explained to many of the Company's employees that the cost of health insurance was going up dramatically because one employee needed a "specialty medication.")

42.    In the months that followed, Behr engaged in a variety of correspondence, and several conversations, with representatives from the Company's Human Resources (or "People") department.  In fact, on July 31, 2024, Behr submitted documentation concerning his condition and the types of accommodations Behr needed.

43.    In August 2024, a Zoom videoconference was held among Behr, Sobola, and an HR representative in which possible ways to accommodate Behr's disability were explicitly discussed.

44.    During or about September 2024, Behr reached out to Casey Russell in the Company's HR department to get more details as to Exegy's disability policies.  Behr never received a response with those policies.

45.    Despite those conversations—and all of that correspondence—Behr never received any final written determination concerning any accommodations that Exegy was either granting or denying.

**BEHR BLOWS THE WHISTLE ON EXEGY'S SYSTEMIC AND
FRAUDULENT TRADING TIMESTAMP ERRORS**

46.     During or about September 2024, Behr reported to his supervisor, Sobola, that the Company was actively utilizing and reporting incorrect trading timestamps in its trading systems.

47.     Behr informed Sobola that this critical error was adversely affecting over a dozen of Exegy's customers.  Behr further informed Sobola that Exegy's clients had not been notified of the issue and that the Company should notify its customers of the issue.

48.     Behr reported this issue to Sobola during the course of regularly scheduled one-on-one Zoom videoconferences between the two of them.

49.     The source of the issue with incorrect exchange timestamps came from Exegy's "Exegy Ticker Plant (XTP)" system, which is an Exegy software/hardware appliance that Exegy sells.

50.     Subsequently, data with these incorrect exchange timestamps were delivered electronically to customers of Exegy's "Axiom" service (including by transmitting such information across state lines, including to Amazon Web Services (AWS) servers in Ashburn, VA) which claims to deliver high quality, low-latency normalized market data.

51.     Exchange timestamps are crucial information that indicate when a particular quote or trade was made with a given exchange.

52.     In fact, on numerous occasions, Exegy's trading servers actively generated and assigned artificial timestamps entirely unsupported by actual market events—effectively fabricating critical transaction data.

53.     This meant that Exegy's customers may have made trading decisions that they otherwise would not have made, because they were provided with incorrect information.

54. Behr explained to Sobola that he was particularly concerned because Exegy's customers were not told that they were being fed data with incorrect trading timestamps.

55. The fact that Exegy was hiding this timestamp error prevented Exegy's own customers from learning about the issue and taking adequate precautionary steps.

56. On one occasion, during or about October 2024, Behr asked a colleague whether the Company planned to report this widespread timestamp error to customers. The colleague responded to Behr by dismissing the question out of hand, stating, "Hah!"—reflecting a pervasive corporate culture of concealment regarding systemic technical defects.

57. Behr believed that the timestamp error constituted a violation of applicable laws, rules, and regulations, including but not limited to laws prohibiting wire fraud; federal securities laws; Securities and Exchange Commission (SEC) regulations; and "Regulation NMS" (or "National Market System"), which constitutes a set of comprehensive rules promulgated by the SEC relating to how certain securities are traded and reported.

58. When Behr reported the trading-timestamp issue to Sobola, she was both visibly and audibly annoyed. She tersely told Behr to disregard the problem.

59. The allegations contained in the above paragraphs under the above heading are hereby referred to as the "Timestamp Whistleblowing Allegations."

### EXEGY LAUNCHES A COORDINATED CAMPAIGN OF HOSTILITY AND RETALIATION

60. Shortly after Behr reported his disability, his manager, Yewande Sobola, and other individuals at the Company, began retaliating against him.

61. During or about May 2024, the Company reassigned Behr's best accounts to others at the Company. In fact, the Company removed him from several big accounts on which Behr had worked for many years.

62. Even while taking away from Behr his best accounts, Sobola and the Company had Behr remain responsible for some of the more-difficult, less profitable accounts.

63. Also in May 2024, Sobola began harassing Behr over minor concerns, gave him goals that were impossible to fulfill, and blamed him for items over which he had no control.

64. Furthermore, subsequent to Behr's reporting of the trading-timestamp issue to his supervisor, Exegy orchestrated a retaliatory paper trail in its efforts to retaliate and discriminate against Behr, in search for a pretextual reason to terminate him.

65. After potential accommodations were discussed in August 2024, and after Behr reported the issues with the trading timestamps in September 2024, and through and until his termination in November 2024, his manager, Sobola, repeatedly harassed him by manufacturing a bad faith series of micro-criticisms, such as:

> (a) asking for more details in tickets even though all known details were provided, and blowing ticket formatting concerns out of proportion;
>
> (b) asking why proposals had not sent to customers even though they were not yet due to be sent;
>
> (c) reprimanding him for a purported "error" in a proposal--even though the work was done by others while Behr was on vacation based on an old document Behr had created (and without an opportunity to update it based on recent negotiations);
>
> (d) blaming him for things that were done without his knowledge and control;
>
> (e) harassing him for details that could not be known at the time; and
>
> (f) directing him to make multiple, conflicting revisions to documents and then criticizing him for the amount of time that it took to complete these circular revisions.

**<u>EXEGY'S SUDDEN RETALIATORY AMBUSH AND PRETEXTUAL DISCHARGE</u>**

66.    On November 14, 2024, the Company abruptly terminated Behr via a Zoom videoconference.  Behr was in attendance on the Zoom, along with Sobola (again, his supervisor), and Casey Russell (from the HR Department).

67.    Prior to his termination, the Company had not provided any performance warning to Behr.  In addition, prior to his termination, the Company had not provided Behr with a Performance Improvement Plan (or PIP).

68.    During the Zoom, his manager, Sobola, stated the Company's purported reasons for his termination, all of which were pretextual (e.g., "lack of attention to detail," "difficulty operating independently," "gaps in communication," "tickets in the wrong format").

69.    These purported critiques run counter to Behr's 17-year track record of positive performance reviews and successful work history at the Company.

70.    In actuality, the Company's decision to terminate him was on account of his disability, and in retaliation for his decision to (a) report his disability and request reasonable accommodations; and (b) raise the issue of improper trading timestamps with his supervisor, Sobola.

**FIRST CAUSE OF ACTION**
**DISABILITY DISCRIMINATION IN VIOLATION OF § 8-107(1)(a)**
**<u>OF THE NEW YORK CITY HUMAN RIGHTS LAW</u>**

71.    Plaintiff repeats and incorporates by reference each of the allegations set forth in the preceding paragraphs of this Complaint, except for the "Timestamp Whistleblowing Allegations," which are explicitly excluded from this Cause of Action.

72.    At the time Behr was subjected to the discriminatory conduct described herein, he was in a protected class under the New York City Human Rights Law ("NYCHRL") because of his disability, or because Exegy perceived him as having a disability.

-11-

73.     Behr had, and Exegy perceived that he had, a disability within the meaning of § 8-102 of the New York City Human Rights Law because he had a "[p]hysical, medical, mental or psychological impairment."

74.     Throughout the time of his employment with Exegy, Behr was fully qualified for his position and was in a position to continue working in that capacity.

75.     Exegy treated Behr less well because of his disability and terminated him after he requested a reasonable accommodation.

76.     The circumstances surrounding Exegy's termination of Behr, including Exegy's continuous hostility following his accommodation requests, give rise to a strong inference that the actual basis for Exegy's actions against Behr was motivated by disability discrimination.

77.     The aforementioned acts of Exegy constitute unlawful discrimination against Behr in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, § 8-107(1)(a) (referred to herein as "the New York City Human Rights Law"), which provides, inter alia, that:

> It shall be an unlawful discriminatory practice . . .[f]or an employer or an employee or agent thereof, because of the actual or perceived . . . disability . . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

78.     As a result of Exegy's violation of the New York City Human Rights Law § 8-107(1)(a), Exegy is liable to Behr pursuant to § 8-502(a) of said statute for "damages, including punitive damages," and pursuant to § 8-502(g) of the statute for "reasonable attorney's fees, expert fees and other costs," as provided for under the law.

79.     Behr has been caused to suffer injuries resulting in financial loss, emotional anguish and suffering, and has been humiliated, demeaned and otherwise degraded because of Exegy's outrageous conduct in violation of Behr's human rights, all of which has impacted his well-being and the quality of his life.

80.    As a direct and proximate result of Exegy's discriminatory conduct complained of herein, Behr has suffered damages, injuries and losses, both actual and prospective, which include damage to his career and the emotional pain and suffering he has been caused to suffer and continues to suffer.

81.    Here, Exegy's conduct towards Behr shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Behr's rights under the New York City Human Rights Law, or that its unlawful actions against Behr were so reckless as to amount to a disregard of Behr's rights, so that in addition to all the damages inflicted upon Behr and in addition to all the measures of relief to which Behr may properly be entitled herein, Exegy should additionally be required to pay punitive damages as punishment for its discriminatory conduct, in order to deter it and others similarly situated from engaging in such conduct in the future.

82.    Behr, therefore, seeks judgment against Exegy on this First Cause of Action, including, among other things, for compensatory damages and punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this Cause of Action.

**SECOND CAUSE OF ACTION**
**FAILURE TO ENGAGE IN COOPERATIVE DIALOGUE AND TO PROVIDE**
**WRITTEN FINAL DETERMINATION IN VIOLATION OF**
**SECTION 8-107(28) OF THE NEW YORK CITY HUMAN RIGHTS LAW**

83.    Plaintiff repeats and incorporates by reference each of the allegations set forth in the preceding paragraphs of this Complaint, except for the "Timestamp Whistleblowing Allegations," which are explicitly excluded from this Cause of Action.

84.    Exegy was obligated to engage in a cooperative dialogue with Behr related to his disability under the New York City Human Rights Law.

85.     Although Exegy initially was amenable to certain accommodations for Behr, as discussed in an August 2024 Zoom videoconference, Exegy never formalized any definitive accommodations.

86.     The aforementioned acts of Exegy constitute a violation of § 8-107(28)(a)(2) of the New York City Human Rights Law, which specifically applies to "disability" and provides, inter alia that "[i]t shall be an unlawful discriminatory practice for an employer, to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation . . . ."

87.     Section 8-107(28)(d) of the New York City Human Rights Law requires that:

> Upon reaching a final determination at the conclusion of a cooperative dialogue . . . the covered entity shall provide any person requesting an accommodation who participated in the cooperative dialogue with a written final determination identifying any accommodation granted or denied.

88.     Exegy failed to provide any written final determination to Behr identifying any accommodations granted or denied.

89.     As a result of Exegy's violations of the New York City Human Rights Law § 8-107(28), Exegy is liable to Behr pursuant to § 8-502(a) of said statute for "damages, including punitive damages," and pursuant to § 8-502(g) of the statute for "reasonable attorney's fees, expert fees and other costs," as provided for under the law.

90.     Behr has been caused to suffer injuries resulting in financial loss, emotional anguish and suffering, both actual and prospective, and has been humiliated, demeaned and otherwise degraded because of Exegy's outrageous conduct in violation of Behr's human rights, all of which has impacted his well-being and the quality of his life.

91.     Here, Exegy's conduct towards Behr shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Behr's rights under the New York City

Human Rights Law, or that its unlawful actions against Behr were so reckless as to amount to a disregard of Behr's rights, so that in addition to all the damages inflicted upon Behr and in addition to all the measures of relief to which Behr may properly be entitled herein, Exegy should additionally be required to pay punitive damages as punishment for its discriminatory conduct, in order to deter it and others similarly situated from engaging in such conduct in the future.

92.    Behr, therefore, seeks judgment against Exegy on this Second Cause of Action, including, among other things, for compensatory damages and punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this Cause of Action.

**THIRD CAUSE OF ACTION**
**RETALIATION FOR REQUESTING A REASONABLE ACCOMMODATION**
**IN VIOLATION OF SECTION 8-107(7)**
**OF THE NEW YORK CITY HUMAN RIGHTS LAW**

93.    Plaintiff repeats and incorporates by reference each of the allegations set forth in the preceding paragraphs of this Complaint, except for the "Timestamp Whistleblowing Allegations," which are explicitly excluded from this Cause of Action.

94.    Exegy's termination of Behr because he requested a reasonable accommodation violated § 8-107(7) of the New York City Human Rights Law, which provides, inter alia, that:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has . . . (v) requested a reasonable accommodation under this chapter . . .

95.    As a result of Exegy's violations of the New York City Human Rights Law § 8-107(7), Exegy is liable to Behr pursuant to § 8-502(a) of said statute for "damages, including punitive damages," and pursuant to § 8-502(g) of the statute for "reasonable attorney's fees, expert fees and other costs," as provided for under the law.

96.     Behr has been caused to suffer injuries resulting in financial loss, emotional anguish and suffering, both actual and prospective, and has been humiliated, demeaned and otherwise degraded because of Exegy's outrageous conduct in violation of Behr's human rights, all of which has impacted his well-being and the quality of his life.

97.     Here, Exegy's conduct towards Behr shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Behr's rights under the New York City Human Rights Law, or that its unlawful actions against Behr were so reckless as to amount to a disregard of Behr's rights, so that in addition to all the damages inflicted upon Behr and in addition to all the measures of relief to which Behr may properly be entitled herein, Exegy should additionally be required to pay punitive damages as punishment for its discriminatory conduct, in order to deter it and others similarly situated from engaging in such conduct in the future.

98.     Behr, therefore, seeks judgment against Exegy on this Third Cause of Action, including, among other things, for compensatory damages and punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this Cause of Action.

## FOURTH CAUSE OF ACTION
## DISABILITY DISCRIMINATION IN VIOLATION OF § 296(1)(a)
## OF THE NEW YORK STATE HUMAN RIGHTS LAW

99.     Plaintiff repeats and incorporates by reference each of the allegations set forth in the preceding paragraphs of this Complaint, except for the "Timestamp Whistleblowing Allegations," which are explicitly excluded from this Cause of Action.

100.    Behr was in a protected class under the New York State Human Rights Law ("NYSHRL") because he had or was regarded as having a "disability" as defined by Executive Law § 292(21), namely, "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques,"

and/or which, under the liberal construction standard mandated by § 300 of said statute, constitutes an impairment of any system of the body or a medical condition.

101.    Up to and during the time of Exegy's wrongful, unlawful, and discriminatory actions against him, Behr was fully qualified for and capable of performing the essential functions of his position with a reasonable accommodation that would not cause an undue burden for Exegy.

102.    The circumstances surrounding Exegy's termination of Behr, including Exegy's continuous hostility following his accommodation requests, give rise to a strong inference that the actual basis for Exegy's actions against Behr was motivated by disability discrimination.

103.    As a proximate result of Exegy's conduct, Behr has been adversely affected in his employment and in his normal life's pursuits, and Behr was caused to suffer injuries resulting in emotional anguish and suffering, and has been humiliated and demeaned because of Exegy's discriminatory conduct in violation of Behr's human rights.

104.    The aforementioned acts of Exegy constitute unlawful disability discrimination against Behr in violation of Chapter 18, Article 15 of the New York State Executive Law § 296(1)(a) (referred to herein as "the New York State Human Rights Law"), which inter alia, states that:

> It shall be an unlawful discriminatory practice . . . For an employer . . . because of an individual's . . . disability . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

105.    As a proximate result of Exegy's conduct, Behr has been adversely affected in his employment, his well-being, in the quality of his life and in his normal life's pursuits, and Behr believes that Exegy's conduct complained of herein has and will continue to have a devastating effect upon his life.

106.    Here, Exegy's conduct towards Behr shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Behr's rights under the New York State Human Rights Law, or that its unlawful actions against Behr were so reckless as to amount to a disregard of Behr's rights, so that in addition to all the damages inflicted upon Behr and in addition to all the measure of relief to which Behr may properly be entitled herein, Exegy should also be required to pay punitive damages as punishment for its reprehensible conduct in order to deter Exegy and others similarly situated from such conduct in the future.

107.    Behr, therefore, seeks judgment against Exegy on this Fourth Cause of Action, including, among other things, for compensatory damages and punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this Cause of Action.

## FIFTH CAUSE OF ACTION
## DISABILITY DISCRIMINATION AND RETALIATION
## IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

108.    Plaintiff repeats and incorporates by reference each of the allegations set forth in the preceding paragraphs of this Complaint, except for the "Timestamp Whistleblowing Allegations," which are explicitly excluded from this Cause of Action.

109.    At all relevant times, Exegy was covered by the Americans with Disabilities Act because it had more than 15 employees.

110.    At all relevant times, Behr was disabled within the meaning of the Americans with Disabilities Act because he has a record of and/or was regarded by Exegy as having a physical or mental impairment that substantially limits one or more major life activities.

111.    Throughout the time of his employment with Exegy, Behr was fully qualified for his position and, with reasonable accommodations, was in a position to continue working in that capacity.

112.    Exegy had notice that Behr required reasonable accommodations.

-18-

113.    Exegy took adverse employment actions against Behr, including terminating his employment, on account of his disability and in direct retaliation for his protected activity of requesting reasonable accommodations.

114.    The circumstances surrounding Exegy's termination of Behr, including Exegy's continuous hostility following his accommodation requests, give rise to a strong inference that the actual basis for Exegy's actions against Behr was disability discrimination.

115.    As a proximate result of Exegy's conduct, Behr has been adversely affected in his employment and in his normal life's pursuits, was caused to suffer injuries resulting in financial loss, emotional anguish and suffering, and he has been humiliated and demeaned because of Exegy's discriminatory conduct in violation of Behr's human rights, all of which impacted his well-being and the quality of his life.

116.    The facts contained herein constitute unlawful discrimination and retaliation against Behr by Exegy in violation of Title I of the Americans with Disabilities Act ("the ADA"), 42 U.S.C. § 12112(a) and 42 U.S.C. § 12203(a), which, inter alia, prohibit discrimination against a qualified individual on the basis of disability and prohibit retaliation against an individual for opposing any act or practice made unlawful by the ADA, or because such individual made a charge or requested an accommodation under the Act.

117.    As a direct and proximate result of Exegy's violation of Sections 12112(a) and 12203(a), Exegy is liable to Behr for compensatory damages and punitive damages in an amount to be determined at trial, in addition to costs, pre-judgment interest and reasonable attorney's fees.

118.    Additionally, the acts of Exegy were committed with reckless indifference, in the face of a perceived risk that its actions would violate Behr's protected rights under the ADA, so that, in addition to the damages inflicted upon Behr and in addition to all the other measures of

relief to which he may be properly entitled herein, Exegy should also be required to pay punitive damages for its discriminatory conduct, in order to deter Exegy and others similarly situated from engaging in such conduct in the future.

119.    Behr, therefore, seeks compensatory damages in this Cause of Action, including, among other things, for loss of earnings and earning capacity and for the emotional harm inflicted upon him, in an award to be determined at a trial of this matter, as well as punitive damages in an amount to be determined at trial, as well as his reasonable attorney's fees, the costs of this action and prejudgment interest.

**SIXTH CAUSE OF ACTION**
**UNLAWFUL RETALIATION IN CONNECTION WITH THE**
**TIMESTAMP WHISTLEBLOWING ALLEGATIONS**
**<u>PURSUANT TO NEW YORK LABOR LAW § 740</u>**

120.    Plaintiff's Limited Incorporation of Prior Allegations.    Plaintiff repeats and incorporates by reference only those factual allegations set forth in the preceding paragraphs of this Complaint that relate to (a) his employment status with Exegy; (b) Behr's discovery and internal reporting to his supervisor of Exegy's practice of utilizing and reporting incorrect trading timestamps in its trading systems—and Exegy's failure to inform its customers of the issue (defined *supra* as the "Timestamp Whistleblowing Allegations"); and (c) Exegy's acts of hostility and retaliation directed towards Behr following his reporting to his supervisor of the Timestamp Whistleblowing Allegations, through and including Exegy's unlawful termination of Behr. (NOTE: Behr explicitly does *not* incorporate into this Sixth Cause of Action any allegations, facts, or claims concerning his requests for medical accommodation, his physical or mental health conditions, his disability discrimination claims, or any protected activity, complaints, or retaliation asserted under the New York State Human Rights Law, the New York City Human Rights Law,

or the Americans with Disabilities Act.  This Cause of Action is strictly limited to, and independent of, those claims.)

121.    At all relevant times, Behr was an employee of the Company.

122.    Each time that Behr complained and protested the Company's utilization and reporting of incorrect trading timestamps as set forth in the Timestamp Whistleblowing Allegations, or objected to or refused to participate in any such activity, policy, or practice, he was engaged in a protected activity under New York Labor Law § 740.

123.    Defendant took adverse action against Behr for his protected activity by, among other things, terminating his employment under pretextual reasons, and by falsely accusing him of poor performance.

124.    Defendant's actions violated New York Labor Law § 740(2)(a) and § 740(2)(c), which provide:

> An employer shall not take any retaliatory action, whether or not within the scope of the employee's job duties, because such employee … (a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety; . . . or (c) objects to, or refuses to participate in any such activity, policy or practice.

125.    As a direct and proximate result of Defendant's conduct, Behr is entitled to damages pursuant to New York Labor Law § 740(5)(d) for, among other things, "the compensation for lost wages, benefits and other remuneration," in addition to front pay pursuant to New York Labor Law § 740(5)(b).

126.    Plaintiff is also permitted to recover "reasonable costs, disbursements, and attorney's fees" and "a civil penalty of an amount not to exceed ten thousand dollars," pursuant to New York Labor Law §§ 740(5)(e) & (f).

-21-

127.    Given the willful, malicious, and/or wanton nature of Defendant's actions, Plaintiff is also entitled to an award of punitive damages pursuant to New York Labor Law § 740(5)(g).

128.    Pursuant to New York Labor Law § 740(4), Plaintiff is entitled to a jury trial.

129.    Accordingly, Behr seeks judgment against Defendant on this Cause of Action, an award of damages in an amount to be determined at trial, in excess of any jurisdictional limits, as well as for pre-judgment interest, attorney's fees and punitive damages.

## JURY DEMAND

130.    Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a judgment against the Defendant as follows:

1.    A declaratory judgment that the actions, conduct, and practices of Exegy complained of herein violate the Americans with Disabilities Act (ADA), the New York State Human Rights Law (NYSHRL), the New York City Human Rights Law (NYCHRL), and New York Labor Law § 740;

2.    An award of damages against Exegy for violations of New York Labor Law § 740, including compensation for lost wages, benefits, and other remuneration, front pay, reasonable attorney's fees, litigation expenses, a civil penalty, costs, and disbursements;

3.    An award of back pay, lost benefits, and front pay that Behr lost as a result of Exegy's unlawful discrimination, accommodation failure, and retaliatory conduct, in an amount to be determined at trial, together with pre-judgment and post-judgment interest;

4.    An award of compensatory damages, in an amount to be determined at trial, to compensate Behr for all non-monetary and economic losses, including but not limited to loss of

-22-

future professional opportunities, loss of future income, and compensation for pain, suffering, mental anguish, and emotional distress caused by Exegy's unlawful actions;

5.      An award of punitive damages, in an amount to be determined at trial, pursuant to the NYCHRL, the NYSHRL, the ADA, and New York Labor Law § 740;

6.      An award of Plaintiff's reasonable attorney's fees, expert witness fees, litigation expenses, and costs and disbursements, to the fullest extent permitted by federal, state, and city law; and

7.      Such other and further relief to which Plaintiff is entitled, and/or as the Court may deem just, equitable, and proper.

Dated: July 16, 2026                    Respectfully submitted,
       New York, NY


                                        /s/ Aaron Foldenauer
                                        Aaron Foldenauer, Esq.
                                        LAW OFFICE OF AARON S. FOLDENAUER
                                        30 Wall Street, 8th Floor
                                        New York, NY  10005
                                        Telephone: (212) 961-6505
                                        Email: aaron@nyelectionlaw.com

                                        *Attorney for Plaintiff Michael A. Behr*